**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **A.M. and X.M.**

**No. 18-0494** (Harrison County 17-JA-50-2 and 17-JA-51-2)

**FILED**

**November 21, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**MEMORANDUM DECISION**

Petitioner Mother C.M., by counsel Julie N. Garvin, appeals the Circuit Court of Harrison County's March 28, 2018, order terminating her parental rights to A.M. and X.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Jenna L. Robey, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period and finding that termination of her parental rights was in the best interest of the children and necessary for their welfare.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2017, the DHHR filed a petition alleging that petitioner failed to protect her children from sexual abuse and that she abused controlled substances in the presence of the children. The DHHR alleged that A.M. disclosed sexual abuse by petitioner's boyfriend, V.L., in February of 2017. Despite instruction from law enforcement and the DHHR, petitioner continued to live intermittently with V.L. and continued to allow V.L. access to A.M. during that time. Additionally, the DHHR alleged that petitioner and V.L. engaged in domestic violence in the home and that A.M. had multiple unexcused absences from school. According to the DHHR, petitioner reluctantly agreed to a "protection plan" and the children were placed with a relative. Petitioner waived her preliminary hearing.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

The circuit court granted petitioner a three month preadjudicatory improvement period in May of 2017. Petitioner agreed to the following terms: participation in random drug screening; undergo a psychological evaluation and drug and alcohol assessment; participation in parenting and adult life skills classes; participation in domestic violence counseling and anger management therapy; participation in supervised visitation; and maintain contact with the DHHR.

In September of 2017, the DHHR filed an amended petition alleging that petitioner failed to participate in her preadjudicatory improvement period. In support, the DHHR alleged that petitioner failed to report or refused to drug screen on seventeen different occasions and tested positive for marijuana, amphetamines, and methamphetamines in late August of 2017. Additionally, the DHHR alleged that petitioner missed four supervised visits with the children. Finally, the DHHR alleged that petitioner and V.L. engaged in a domestic dispute in July of 2017.

In November of 2017, the DHHR filed a second amended petition that included more recent sexual abuse disclosures from A.M. against both V.L. and petitioner. According to the DHHR, A.M. made multiple disclosures to her therapist that indicated V.L. "tried to put his private part in hers" and that "her mom, [petitioner], watched this happen." A.M. also disclosed that petitioner asked her "if she wanted SEX [sic]" at which point "[V.L.] put his part in her front and butt" and "[petitioner] asked if she like [sic] it and she said no." The DHHR alleged that in September of 2017 A.M. disclosed that both petitioner and V.L. "had licked her peehole" and repeated this allegation in October of 2017. The second amended petition also contained allegations that petitioner missed four additional supervised visitations and that she missed thirty-six drug screens in total.

In December of 2017, the circuit court held two adjudicatory hearings, and petitioner admitted that she failed to complete her preadjudicatory improvement period. However, petitioner contested the allegations of sexual abuse and substance abuse. The DHHR called A.M.'s therapist who opined that the child exhibited behaviors consistent with sexual abuse. The therapist also confirmed the disclosures referenced in the second amended petition and indicated that it was common for a child's disclosures to become more detailed as therapy continues. As part of therapy, A.M. made a "booklet" titled "Things I Remember about Mom and [V.L.]." The booklet was introduced as evidence and included allegations in A.M.'s handwriting that "pictures were taken when [V.L.] stuck his part in her peebug." A.M. further wrote that petitioner "wanted [V.L.] to do it to her." A.M.'s relative and caretaker testified and confirmed she also heard these statements from A.M. Petitioner testified and admitted that she resumed living with V.L. after A.M.'s initial disclosure against the advice of law enforcement and the DHHR. Although petitioner denied performing any sexual act on A.M., she stated that she now believed that V.L. sexually abused A.M. and that she failed to protect her child. Petitioner further testified that she did nothing wrong and "it is easy to be unsure" whether A.M.'s allegations were true. Ultimately, the circuit court found that petitioner did not complete the terms of her preadjudicatory improvement period. Further, the circuit court found that petitioner sexually abused A.M., failed to protect A.M. from sexual abuse and substance abuse, and failed to

provide food and clothing for the children. Accordingly, the circuit court adjudicated petitioner as an abusing parent and the children as abused and neglected children.[2]

The circuit court held the final dispositional hearing in January of 2018, and petitioner moved for a post-adjudicatory improvement period. The DHHR presented three witnesses. Petitioner also testified. The evidence showed that, since the adjudicatory hearing in December, petitioner began participating in parenting and adult life skills classes, gained employment, and was searching for a suitable place to live. Petitioner's service provider testified that petitioner represented she had been drug free since mid-October of 2017. However, petitioner's drug screens were positive for marijuana throughout December of 2017 and positive for hydrocodone once during that time. The circuit court found that petitioner intentionally misrepresented her sobriety to her service provider in an effort to avoid addressing the problem. Additionally, petitioner continued to deny that she sexually abused A.M. despite "the graphic, detailed statements of the infant child." The circuit court found petitioner's denial of her own participation disturbing considering that A.M.'s booklet "clearly establishes the same in the child's own handwriting."

Ultimately, the circuit court denied petitioner's motion for a post-adjudicatory improvement period on the basis that petitioner failed to complete any terms of her preadjudicatory improvement period and that she failed to acknowledge the problems that led to the filing of the petition. The circuit court further found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected based on petitioner's continued substance abuse, her failure to follow through with services, and her sexual abuse of A.M. Accordingly, the circuit court terminated petitioner's parental rights in its March 28, 2018, order. Petitioner now appeals that order.[3]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if

---

[2]X.M. was also adjudicated as an "abused child" based, in part, on the circuit court's finding that another child in his home, A.M., was sexually abused. *See* West Virginia Code §49-4-201.

[3]The father's parental rights were also terminated below. According to the parties, the permanency plan for the children is adoption in their current foster placement.

3

the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

On appeal, petitioner first argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period. Petitioner asserts that she properly filed a written motion for a post-adjudicatory improvement period and testified how she planned to comply with the services offered. We find no error in the circuit court's decision. Although petitioner did properly request an improvement period, she ignores the heightened standard required for the granting of a second improvement period. West Virginia Code § 49-4-610(2)(D) requires that "[s]ince the initiation of the proceeding, the respondent has not previously been granted *any* improvement period or the respondent demonstrates that since the initial improvement period, the respondent has experience a substantial change in circumstances" and the respondent "demonstrate[s] that due to that change in circumstances the respondent is likely to fully participate in a further improvement period." (emphasis added.)

Petitioner previously participated in a preadjudicatory improvement period and admitted that she failed to complete that improvement period. Therefore, petitioner was required to demonstrate that she experienced a substantial change in circumstances in order to obtain a second improvement period. However, the record shows that petitioner's circumstances did not change. Petitioner continued to use controlled substances and continued to deny that she sexually abused her child.  Further, we have previously held

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)). The circuit court found that petitioner continued to deny her role in the sexual abuse of her child despite the continued and consistent disclosures of the child. Consistent with our prior holdings, petitioner's failure to acknowledge this problem renders any further improvement period futile. Therefore, we find no error in the circuit court's denial of petitioner's motion for a post-adjudicatory improvement period.

Petitioner also argues that the circuit court erred in finding that termination of her parental rights was in the best interests of the children and necessary for their welfare. Petitioner states that West Virginia Code § 49-4-604(b)(6) requires findings that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected and that termination is necessary for the welfare of the child. According to petitioner, the DHHR did not provide sufficient evidence to support either finding. We disagree.

4

As petitioner states, West Virginia Code § 49-4-604(b)(6) provides that a circuit court may terminate parental rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the children. Additionally, West Virginia Code § 49-4-604(c)(5) provides that no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected exist when the "abusing parent or parents have . . . sexually abused or sexually exploited the child, and the degree of family stress and the potential for further abuse and neglect are so great as to preclude the use of resources to mitigate or resolve family problems." As mentioned above, the circuit court found that petitioner sexually abused A.M. and continued to deny her involvement in the same. Further, the circuit court found that petitioner failed to protect A.M. from V.L., despite knowledge of A.M.'s allegations against V.L. Based on petitioner's behavior of continually returning to V.L. and ignoring A.M.'s cries for help, it is clear that there is a high potential for continued abuse in petitioner's custody. Therefore, we find no error in the circuit court's finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected.

The circuit court was also correct in finding that termination of petitioner's parental rights was necessary for the welfare of the children. A.M.'s detailed accounts of the sexual abuse indicate that petitioner, as well as V.L., perpetrated sexual abuse against her. Further, petitioner continued to deny such acts and clearly was not seeking treatment to remedy this issue. Therefore, it was reasonable for the circuit court to conclude that A.M. would be subject to continued sexual abuse in petitioner's care. On appeal, petitioner argues that a temporary guardianship could protect the children while maintaining her parental rights. According to petitioner, she is not able to be a good parent now, but may be in the future. However, "courts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4 (2011). The circuit court was not required to speculate as to whether petitioner could be a fit parent in the future, especially considering petitioner's failure to acknowledge the issues of abuse and neglect. Accordingly, we find no error in the circuit court's finding that termination of petitioner's parental rights was in the best interests of and necessary for the welfare of the children.

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 28, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**: November 21, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment